MoKinney, J.,
delivered the opinion of the Court.
*583 The complainants are the minor children and heirs at law of William Gilchrist, who died in Arkansas, the place of his domicil, about .the year 1843. They seek, by this bill, to recover some thirty acres of land, lying in, and adjoining, the town of Shelbyville — which descended to them from the estate of their father, and which, as they allege, was illegally sold, in a proceeding against them in Chancery, and purchased by the defendant, Cannon.
It appears that said William Gilchrist was formerly a resident of Bedford county, in this State, but had removed, some years before his death, to the State of Arkansas. He died seized and possessed of the piece of land before mentioned, and personal effects of the value of less than twenty dollars, situate in said county of Bedford. After, his death, namely, in April, 1844, administra'tion upon his estate in Tennessee was granted by the County Court of Bedford, to George W. Haywood, a citizen of this.State, who claimed to be a creditor of the estate of said Gilchrist.
In June, 1844, said Haywood, as administrator, filed a bill in the Chancery Court at Shelbyville, setting forth that he was himself a creditor of said estate to the amount of some eight hundred or a thousand dollars; that the estate was also indebted to a mercantile house of Philadelphia, and to Charles Ready, to the amount of several hundred dollars, and that said creditors had instituted proceedings by attachment, in the lifetime of the intestate, by virtue of which the piece of land before mentioned had been attached for the satisfaction of said debts. The bill further alleged that the insolvency of the estate had been suggested to the *584 County Court by the complainant, as administrator, and that the value of the estate exceeded five hundred dollars; that the personal assets were of little value, and the real property was the only fund for the payment of said debts. The widow and children of the intestate, together with the above mentioned creditors, were made defendants to the bill; and it was prayed that the land might be sold for the satisfaction of said debts, under the direction of the Chancellor, pursuant to the Statute.
Publication was made as to the widow and heirs, who were residents of Arkansas; and a guardian ad litem was appointed for minor heirs, who filed an answer in their behalf.
At the hearing, at the February Term, 1845, an account was ordered. The Master was directed to state an account of the several debts due from the estate, including the debt claimed by the complainant; also of the personal assets of every description belonging to the estate of the intestate, “ in Bedford county; ” also to report whether a sale of the land would be necessary for the payment of the debts; and furthermore, “whether the intestate’s estate was insolvent, both in this State and elsewhere.”
The Master reported to the August Term, 1845, that there was due from the estate of the intestate to Haywood, the complainant, the sum of $630, and to the other creditors about the sum of $878; and that the personal assets amounted to about the sum of $20. The Master further reported that a sale of the land would be necessary for the payment of the debts, but that the estate of the intestate “was amply solvent and good in Arlcansas.”
*585 This account was re-committed to the Master, with directions to take further proof, and report again in regard to the debts due from the estate. In the second report, the claim of Haywood was wholly disallowed, but the debts to the other creditors were stated as in the first report. On exception to the report, in behalf of Haywood, his claim was again referred to the Master for a further report. And the justice of the other debts against the estate not being questioned, the Chancellor decreed that the land should be sold by the Master, on a credit of twelve months, after the usual notice, for the satisfaction of said debts.
At the August Term, 1846, the Master reported that he had sold the land, containing 80 or 81 acres, to Robert Cannon, Sr., for $1,200.50, and had taken his note for the same. The Master likewise reported a balance due to Haywood of $90.80. To this part of the report, reducing Haywood’s claim to the sum stated, the latter excepted. To the report, as regarded the sale of the land, there was no exception. The Chancellor disallowed the exceptions to the report, and proceeded to decree a confirmation of the sale; and, accordingly, divested the title to said land out of the heirs of Gilchrist, and vested the same in Cannon, the purchaser. The complainant, Haywood, presented an appeal to the Supreme Court.
At t e December Term of the Supreme Court, 1846, the death of Haywood, the appellant, was suggested and proved; and no steps having been taken to revive, an order was made at the December Term, 1847, of said Court, that said suit be abated.
On this state of facts, the present bill was brought *586 by the heirs of Gilchrist, to recover said land, in March, 1857. The Chancellor dismissed the bill.
In the bill, and in the brief submitted by the counsel for the complainants, several questions are made, the more important of which will be noticed.
There can be no doubt, that, under the Acts of 1881, ch. 24, and 1841, ch. 69, the administration granted by the County Court of Bedford, to Haywood, was an administration commensurate with the limits of this State; and the administrator thus appointed was the proper representative of the intestate, as to all his property and effects, situate in this State, at the time of his death. Such is the plain import of the second section of the Act of 1831.
It was, therefore, improper in the Chancellor to limit the inquiry of the Master, in respect to the personal assets, to Bedford county. By the Act of 1838, regulating the administration of the estates of persons dying insolvent, (under which this proceeding took place,) the Court has no power to sell the real estate of the decedent until after “the personal estate is ascertained by the report of the Master, and the confirmation thereof by the Court, to be insufficient for the payment of the debts of the estate.” But this error is of no practical effect in this case, as it is manifest from the whole record, that the intestate had no personal assets at the time of his death in any other county of this State.
It is likewise very clear, that the inquiry directed by the Chancellor, as to whether the estate of Gilchrist was solvent or otherwise, in Arkansas, was altogether irrelevant.
Under the Acts before referred to, the property, real *587 or personal, of a non-resident decedent, situate within the jurisdiction of this State at the time of his death, may be administered here, under our insolvent law. .It matters not that the estate of such deceased person, in the place of his domicil, is solvent, and able to discharge all the debts due therefrom. It is an admitted principle of international law, that every State has the right to control and dispose of property actually within its jurisdiction; and it is the duty of every State to protect the rights of its own citizens, and to aid them in the recovery of their just debts, without the necessity of resorting, for satisfaction, to the distant forum of the original administration. Such is the reason and policy of the Acts of 1831 and 1841.
It is insisted, by the counsel of complainants, that it does not distinctly appear, from the record, that publication was made as to the heirs of Gilchrist, who were non-residents; and, therefore, they were not parties, and, of course, not affected by the decree. The answer to this objection is, that the decree of the Chancellor recites that publication was duly made as to said heirs. This must be taken as sufficient, in this Court, unless it appeared that the fact were positively otherwise, from something in the record; and there is nothing in the record to contradict the decree in this respect.
The next position assumed, is, that the share of Catharine Gilchrist in said property, was not disposed of by the sale under the decree of the Chancery Court; and that, as to this share, at all events, the complainants are entitled to recover. Said Catherine was one of the minor children of William Gilchrist, against whom the bill of Haywood was filed. She died short *588 ly after the filing' of said bill, unmarried, and without issue, leaving her brothers and sisters heirs at law. No notice] of her death was taken upon the record, and the case proceeded as if the death had not happened; by the decree ordering the sale, the Master’s report of sale, and the final decree in the cause, the share of said Catharine is treated as having been sold, .together with the shares of the surviving heirs; or, in other words, the entire tract was sold, as if all the heirs were still living; and the title vested in the purchaser accordingly.
This proceeding was certainly not in accordance with the ususal practice in such cases. But, can it be maintained, upon sound principles of law or of reason, that the title to the entire tract of land did not pass, by the sale, to the purchaser. The case of Whilley vs. Davis, 1 Swan, 333, 336, presented the same question; and Judge Green suggests a doubt — for it, perhaps, amounts to nothing more — whether the undivided share of an heir, dying, pending a suit in Chancery, for the sale of the estate of the several heirs, without a revivor against the heirs of the deceased, would be disposed of by the decree and sale. It may be inferred, that the opinion of the Judge was, that the interest of the deceased heir was not disposed of; but the point is not expressly decided. After much reflection upon the question, we have come to a different conclusion.
The heirs of Catharine Gilchrist, as already stated, were her brothers and sisters, who were joint defendants with her in the pending suit, brought for the purpose of subjecting the entire tract of land to sale for *589 the payment of the ancestor’s debts. On her death, her interest in the land became instantly vested in the surviving defendants to the suit.- The effect, simply was, that the entirety which, at the commencement of the suit, was vested jointly, in the four defendants, by the death of one, was, by' operation of law, vested exclusively in the three surviving defendants. If this be so, can it be said, in any proper sense, that a decree directing a sale of the interest of the three surviving heirs, did not dispose of the entire estate ? Surely not. The entire estate was in the surviving defendants at the time of the decree of sale; and that the entire estate was sold. It would certainly have been otherwise, if the heirs of the decedent had been strangers to the record. And the result would also have been different as to any property cast upon the surviving defendants, by the death of their defendants, not derived by her from the estate of their common ancestor, for whose debts it was sought to make the property liable. But no distinction, in principle, can be based upon the fact, that the surviving defendants derived title to one undivided portion of the land not immediately by descent from the father, but mediately through their deceased sister; inasmuch as the latter portion, in their hands, was as much subject to the debts of their common ancestor, as the shares which they held by direct descent. "We hold, therefore, that the title to the entire tract of land passed to, and vested in the purchaser under the Chancery sale.
The remaining ground relied on by the complainats, is, that by the abatement of the suit of Haywood against them, in the Supreme Court, the entire proceedings in *590 tbe cause were vacated and annulled from tlie begin-ing; and, that, consequently, by operation of law, the title to the land reverted to them.
It is true, the principle is maintained in the books, that an appeal to a superior tribunal, in contradistinction from a writ of error, or an appeal in the nature of a writ of error, has the effect of annulling the judgment of the inferior Court; and this principle has been hold applicable to appeals from a Court of Chancery, as well as from Courts of Law: 2 Sneed, 1; 3 Sneed, 208. But, this principle must be understood with some just limitations, and necessary restrictions. It must be taken to apply to only such matters as may have been appealed from. The proceedings in a cause, may, in their nature, be divisible; or, the same suit may contemplate different objects. It would be most absurd to hold, in a case where some of the objects in view had been obtained, and definitely settled by the judgment of the inferior Court, and to the mutual satisfaction of all the parties, that an appeal upon some distinct, collateral matter, should have the effect to annul and vacate the proceedings thus conclusively determined, and not embraced, or intended to be embraced, by the appeal. And the absurdity of such a doctrine is more apparent, in a case where third persons may have acquired rights on the faith of the determination of the inferior Court, during the pendency of the suit in that tribunal, as in the case before us. ■
We hold, that such is not the rule; and that the appeal only annuls or vacates such orders, judgments, or decrees, as, in legal . contemplation, are appealed from. And that, consequently, the abatement of the *591 suit in the Appellate Court, operates only as an abatement in respect to the matters appealed from;- or,- at all events, that it works no abatement as respects ..the rights of third persons acquired under the judgments or decrees of the inferior tribunal, which were acquiesced in, and not appealed from.
In the case before us, the sale of the land was entirely satisfactory to Haywood. There was no exception to it from any quarter. Neither from the decree directing the sale, nor from the final decree of confirmation, was an appeal taken, or desired to be taken. The appeal was obviously taken, alone, from the order of the Chancellor disallowing the complainants exceptions to the Master’s report, in reducing his demand against the estate from $680, to less than $100. To this extent, then, the suit is abated; but as respects the title of the defendant, Cannon, under his purchase, the proceedings and decrees are left intact.
Decree affirmed.